23-00657MB

# AFFIDAVIT IN SUPPORT OF APPLICATION

1. I, Elizabeth Guggisberg, being first duly sworn, hereby depose and state as follows:

2. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I am a Special Agent employed by the Department of Homeland Security, Homeland Security Investigations (HSI). I am currently assigned to the Assistant Special Agent in Charge, Nogales, Arizona office.

3. I am a graduate of the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training which were conducted at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to being employed by HSI, I was a Border Patrol Agent with the United States Border Patrol for approximately three years. I graduated from the University of Minnesota in 2016 with a Bachelor of Arts in Sociology of Law, Criminology, and Deviance.

4. As a Special Agent with HSI, I am responsible for investigating and enforcing violations of federal law, including those enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code. In preparing to become a Special Agent, I attended the Criminal Investigator Training Program and the HSI Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia.

5. As part of my current duties with HSI in Nogales, Arizona, I have participated in criminal investigations involving firearm trafficking organizations (FTOs). Pursuant to my participation in these investigations, I have performed various tasks including: (a) functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics, munitions and weapons; (b) functioning as a surveillance agent and thereby observing and recording movements of persons smuggling narcotics, weapons, illicit proceeds, and other activity in support of their illegal activities; (c) interviewing witnesses, suspects, cooperating individuals, and confidential sources

relative to the illegal smuggling of narcotics, weapons, and illicit proceeds; and (d) participating in investigations involving narcotics and weapons trafficking.

6. While conducting narcotics and weapons trafficking investigations, I have personally interviewed informants and persons involved in the distribution of illegal narcotics, and weapons trafficking into Mexico. I have consulted with HSI investigators concerning the practices of weapons traffickers and the best methods of investigating them. In preparing this affidavit, I have conferred with other Special Agents and law enforcement officers involved in this investigation. Furthermore, I have personal knowledge of the following facts or have learned them from the individuals mentioned herein.

7. Pursuant to 18 U.S.C. § 3051, I am empowered to enforce criminal laws of the United States. As a result of my training and experience, I am familiar with federal laws, including 18 U.S.C. § 554, Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law, be fined under this title, imprisoned not more than 10 years, or both.

8. I am also familiar with 18 U.S.C. § 371, which states that if two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

9. Based upon my experience in conducting criminal investigations of violations of federal firearm trafficking laws, I know that firearm trafficking organizations have developed several methods to insulate their illegal activities from law enforcement detection. These methods are common to firearm trafficking organizations (FTOs) to varying degrees of sophistication. One method that trafficking organizations have employed is to utilize cellular

telephones to communicate when conducting their illegal activity. These devices are utilized in furtherance of the crime to include; notification of the pick-up and drop-off locations of the vehicle used to smuggle the firearms / munitions, photographing members of the conspiracy, or of the firearms / munitions, scouting for law enforcement, and collecting proceeds derived from this unlawful activity.

10. I submit this Affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a Search Warrant authorizing the examination of the contents of electronic communication devices capable of accessing the internet (the "Target Device," defined below), and the extraction from the Target Device of electronically stored information further described in Attachment B hereto. Because this Affidavit is being submitted for the limited purpose of securing a warrant to search the Target Device, I have set forth only the facts which I believe are necessary to establish probable cause to search the Target Device.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

11. The electronic communication device to be examined is described as:
    one (1) blue Apple iPhone, in Evidence Bag Number: A9405174 (hereinafter, "Target Device").

    The Target Device to be searched pursuant to the attached Application is further described in Attachment A hereto.

## BACKGROUND ON SMARTPHONES

12. Based upon my knowledge, training, and experience, as well as information related to me by law enforcement officers and others experienced in the forensic examination of electronic communication devices, I know that certain types of cellular telephones referred to as "smartphones" (such as the Target Device) generally offer more advanced computing ability and internet connectivity than standard cellular telephones. Provided that internet access

has been purchased through an electronic communication service provider for a particular smartphone, a smartphone is capable of running complete operating system software, has full access to the internet and/or electronic mail (including file attachments), is capable of text and instant messaging, can create and edit documents created with computer software, is capable of storing large amounts of data, and can be interfaced with desktop and laptop computers.

13. As described in Attachment B hereto, this Affidavit also seeks permission to search and seize certain electronic records that might be stored within the Target Device. Some of these electronic records might take the form of files, documents, or other data that are user generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

14. Although some of the records requested in this Affidavit might be found in the form of user-generated documents (such as electronic format documents and picture and movie files), electronic communication devices (such as the Target Device) can contain other forms of electronic evidence that are not user-generated. In particular, an electronic communication device may contain records of how it has been used and/or the person(s) who utilized the electronic communication device. Based upon my knowledge, training, and experience, as well as information related to me by law enforcement officers, and other persons involved in the forensic examination of electronic communication devices, I know that:

   a. Data on electronic communication devices not currently associated with any file can provide evidence of a file that was once on the electronic communication device, but has since been deleted or edited, or of a deleted portion of a file;

   b. Virtual memory paging systems can leave traces of information on an electronic communication device that can be used to determine what tasks and processes were recently in use;

   c. Web browsers, e-mail programs, social media platforms, and chat programs store configuration information on the electronic communication

      devices that can reveal information such as online nicknames and passwords;

d. Operating systems can record additional information, such as the attachment of peripheral electronic devices, and the number of occasions on which the peripheral electronic devices were accessed;

e. Computer file systems can record information about the dates that files were created and the sequence in which they were created. This information may be evidence of a crime and/or indicate the existence and/or location of evidence in other locations on the electronic communication device;

f. When an electronic communication device has more than one user, files can contain information indicating the dates and times that the files were created as well as the sequence in which the files were created, and whether a particular user accessed other information close in time to the file creation dates, times, and sequences; and

g. The types of evidence described above may be direct evidence of a crime or indirect evidence of a crime, indicating the location of evidence or a space where evidence was once located. All these types of evidence may indicate ownership, knowledge, and intent to commit a given offense. Evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how electronic communication devices operate and how electronic communication devices are used.

**Characteristics Of Individuals Involved in Firearms Trafficking Organizations**

15. Based upon my knowledge, experience, and training in FTO investigations, as well as the training and experience of other law enforcement officers with whom your Affiant has had

discussions, your Affiant knows that there are certain characteristics common amongst individuals involved in FTOs. Individuals involved in firearm-trafficking activity tend to:

a. Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;

b. Collect data pertaining to other co-conspirators involved in firearms and munitions trafficking activity, including firearms and munition types and quantities provided, as well as monies owed and/or paid for specific firearms and ammunition.

c. Possess and maintain records reflecting bank transactions and/or money transfers;

d. Maintain collections of records that are in a digital or electronic format in a safe, secure and private environment, including electronic communication devices (such as the Target Device). These records are often maintained for several years and as such can still be located on the phone;

e. Correspond an/or communicate with and/or meet with other firearm-trafficking associates to share firearm-trafficking information and/or materials using text messages, emails, SMS/MSS messages, voice messages, instant messages and third-party messaging applications such as WhatsApp, Signal, Facebook Messenger, Twitter, Telegram;

f. Retain correspondence from other firearm-trafficking co-conspirators relating to firearm-trafficking activity;

g. Conduct web searches related to purchasing and acquiring firearms and munitions, including searches on armslist, gunbroker.com, and other sites that sell, transfer or trade firearms and munitions;

h. Take photographs or record videos of the firearms/munitions desired, acquired and received;

i. Send out or receive GPS coordinates or GPS location pins to identify locations to meet, transfers the firearms and ammunition and the stores or locations to purchase the firearms and munitions; and

j.  Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the firearm-traffickers have been in contact and/or conducted firearm-trafficking activity.

## HISTORY OF INVESTIGATION AND PROBABLE CAUSE

16. On August 4, 2023, Jorge CASAHONDA Padilla, a Mexican Citizen, attempted to enter the Republic of Mexico through the Mariposa Port of Entry (POE) in Nogales, Arizona. CASAHONDA was driving a gray 2015 Kia Soul bearing Arizona license plate "4RA2YM."

17. A Customs and Border Protection (CBP) Contraband Enforcement Team (CET) officer was monitoring CBP systems when a system generated alert advised the vehicle driven by CASAHONDA was suspected of smuggling contraband. CBPO Tomlin was manning the primary vehicle lanes and interacted with CASAHONDA in the Southbound Lane. CBPO Tomlin asked CASAHONDA where he was going, CASAHONDA said Nogales, Sonora. CBPO Tomlin asked CASAHONDA where he was coming from, to which he replied "Circle K."

18. CBPO Dahdal then obtained a negative binding declaration for firearms, ammunition and any currency in excess of $10,000 from CASAHONDA. CBPO Dahdal asked CASAHONDA what his purpose of travel into the United States was. CASAHONDA stated he crossed the border to go to Carl's Jr to eat.

19. CASAHONDA was escorted to the detention area where a pat down was completed. The vehicle was then sent through the Z-portal x-ray machine where the operator, CBPO Rea, advised there were anomalies located in the trunk area of the vehicle.

20. Canine Enforcement Officer (CEO) Martinez conducted an outbound canine vehicle search along with his assigned Currency and Firearms Detector Dog (CFDD) Knight. Knight alerted to an odor he is trained to detect in the spare tire area at the back of the vehicle.

21. CBPOs removed ten AK-47 rifles from the trunk area. Each rifle had a folded stock and was wrapped in cellophane plastic along with two magazines. The rifles were wrapped in a gray blanket. The gray blanket was also wrapped in cellophane.

22. Homeland Security Investigations (HSI) Special Agents (SA) responded to investigate. SA Guggisberg asked CASAHONDA several biographical questions. During this time, CASAHONDA's cellular phone received at least four calls from an unidentified caller. CASAHONDA told agents that he had taken drugs that day.

23. While examining the exterior of the Target Device, SA Guggisberg observed the lock screen of the device had many WhatsApp notifications from multiple individuals. Many of these notifications had come in after CASAHONDA had been detained by CBP.

24. In my training and experience, I know that alleged criminals are aware their activity is illicit and attempt to conceal their activity by using alternative means of communication, such as WhatsApp messages, Facebook messages, data location, emails, etc. I also know their cellular phones or electronic media devices may contain evidence of the illicit activities. Therefore, I believe there may be evidence of firearms trafficking on the Target Device to include coordinator identity and location data relevant to the load and offload locations of the firearms.

25. It is not uncommon for individuals engaged in firearm trafficking to conspire with others willing to participate and further assist in these activities. Cellular phones are one of the most immediate, convenient, and effective ways to communicate over long and short distances while engaged in criminal activity. I believe that the suspect in this matter, CASAHONDA, would have communicated via his cellular phone with the others involved in obtaining, transporting and receiving the firearm and munitions to set up and coordinate the logistics of exporting the firearms and munitions from the United States into the Republic of Mexico.

26. Also, current technology has allowed personal cellular phones to receive and transmit media in the form of pictures and movies and smugglers often take pictures of themselves, their associates, and their property. Currently, phones have also been equipped with access to the

internet and have thus allowed the user to transmit electronic mail (E-mail) as an alternative form of communication. Access to the internet also allows the user to utilize real time GPS enabled maps to navigate to and from pick up/drop locations. Smugglers commonly maintain addresses or telephone numbers in cellular telephones which reflect names, addresses and/or telephone numbers of their associates in the smuggling organization.

27. Based upon the above, I believe that probable cause exists to search the Target Device for the items set forth in Attachment B hereto. I believe that the Target Device contains evidence relating to the commission of criminal offenses, that is, conspiracy to and smuggling goods from the United States, in violation of Title 18, United States Code, Section 554 and Title 18, United States Code, 371.

28. I swear under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Respectfully submitted this ___27th_____ day of September 2023.

ELIZABETH M GUGGISBERG
Digitally signed by ELIZABETH M GUGGISBERG
Date: 2023.09.27 16:41:01 -06'00'

Elizabeth Guggisberg
Special Agent, HSI

Subscribed electronically and sworn to me telephonically, on this  28th  day of September 2023.

Honorable Eric J. Markovich
United States Magistrate Judge

## ATTACHMENT A
## ITEM TO BE SEARCHED

The property to be searched is as follows:

A blue Apple iPhone, Evidence Bag Number: A9405174 (Target Device), which HSI Agents seized from CASAHONDA's person on August 4, 2023, at the time of his arrest at the Mariposa Port of Entry, Nogales, Arizona. The Target Device is currently secured at the HSI office in Rio Rico, Arizona.

23-00657MB

## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

2. All records on the Target Device, as described in Attachment A, that relate to violations of 18 U.S.C. §§ 554 and 371, including:

a. Cellular information: cellular numbers, cellular service providers, caller identifications displaying sent, received, dialed and missed calls;

b. Communications from third-party messaging applications such as "Telegram," WhatsApp," "Signal," "Facebook Messenger," "Twitter" and other such programs;

c. Any lists or communications related to types and amounts of firearms/munitions, including the locations of stash houses and the names of individuals coordinating the purchase, acquisition, transportations and delivery of firearms/munitions;

d. Any information related to the sources of firearms/munitions;

e. SMS/MMS messages, voice messages, instant messages;;

f. Text information: text messages received, sent, drafted, and deleted;

g. Call logs;

h. Photographs: photographs taken, received, sent, saved, and deleted;

i. Videos: videos taken, received, sent, saved, and deleted;

j. Audio: audio taken; received, shared, sent, saved and deleted;

k. Electronic mail, including Emails: emails sent, received, drafted, saved and deleted;

l. List or descriptions of types and quantities of firearms/munitions to be acquired, purchased, transported, or received;

m. Contact information: telephone contact list displaying names, addresses, telephone numbers, and deleted information;

n. Web browser history including searches involving firearms/munitions;

o. Social media accounts such as Facebook, Instagram, Tik Tok, etc.;

 p. Financial account information including records pertaining to financial transactions derived from the firearms-trafficking activity including amounts of money obtained, spent received, exchanged, deposited, withdrawn, transferred, or delivered, including the dates, places and individuals sending/receiving the money;

 q. Geo-location data, map applications and pins;

 r. Notes, appointment books and/or calendars, to-do lists, bookmarks;

 s. Travel information: any information recording travel arrangements from July 15, 2023, through August 4, 2023;

 t. Internet: records of Internet Protocol addresses used, and any records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

 u. Any additional records related to the planning, commission, or concealment of the trafficking of firearms/munitions, including the exportation of firearms/munitions from the United States.

2. Evidence of user attribution showing who used or owned the electronic device to be searched at the time the things described in this warrant were created, edited, received, or deleted, such as logs, phonebooks, saved usernames and passwords, documents and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic/video form.